| | |
|---|---|
| **BRIAN KEVIN LEWIS,** ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> **LESLIE COOLEY DISMUKES**[1], ) <br> **Secretary, North Carolina** ) <br> **Department of Adult Correction,** ) <br> ) <br> Respondent. ) <br> _____ ) | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Respondent's Motion for Summary Judgment. [Doc. 9].

**I.    PROCEDURAL BACKGROUND**

Brian Kevin Lewis (the "Petitioner") is a prisoner of the State of North Carolina. Petitioner was charged in bills of information with second-degree murder and possession of a firearm by a felon, respectively, in Buncombe County Superior Court on December 1, 2008. [Doc. 10-8 at pp. 5-6].

---

[1] Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts requires that "the petition must name as respondent the state officer who has custody" of the petitioner. Rule 2(a), 28 U.S.C. foll. § 2254. In North Carolina, the Secretary of the Department of Adult Correction is the custodian of all state inmates. N.C. Gen. Stat. § 148-4 (2023). Accordingly, Leslie Cooley Dismukes, the current Secretary of the North Carolina Department of Adult Correction, is now the proper respondent.

Petitioner pled guilty to both counts that same day pursuant to <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970). [Id. at pp. 15-18]. The court sentenced Petitioner to a minimum of 204 months and a maximum of 254 months of imprisonment on December 1, 2008. [Id. at pp. 19-20]. Petitioner did not file a direct appeal.

On January 8, 2019, Petitioner filed a motion for appropriate relief (MAR) in the Buncombe County Superior Court seeking to set aside his plea and sentence. [Doc. 10-8 at pp. 21-72]. The court denied Petitioner's MAR without a hearing on March 12, 2019. [Id. at pp. 73-74]. Petitioner thereafter filed a petition for writ of certiorari in the North Carolina Court of Appeals on May 22, 2019. [Doc. 10-2]. On May 29, 2019, the appellate court ordered that Petitioner's case be remanded to the trial court for an evidentiary hearing. [Doc. 10-8 at pp. 75]. Petitioner through appointed counsel filed an Amended MAR on August 19, 2019 [Id. at pp. 78-84], to which the State responded on September 16, 2019. [Id. at pp. 93-100].

The MAR court held three evidentiary hearings on July 28, 2020 [Doc. 10-5], August 5, 2020 [Doc. 10-6], and August 18, 2020 [Doc. 10-7]. On August 18, 2020, following the conclusion of the final MAR evidentiary hearing [Doc. 10-7], the State conceded Petitioner's conviction for possession of a firearm by a felon did not satisfy the elements of the offense,

because Petitioner was not then a felon under North Carolina law, and agreed to dismiss that charge. [Doc. 10-8 at pp. 99; Doc. 10-9 at 95]. The MAR court determined that it had failed at Petitioner's sentencing to adjudicate whether certain of Petitioner's prior convictions were valid convictions, and if so, what Prior Record Level Points any such convictions should have received for sentencing purposes. [Doc. 10-7]. As such, the MAR court determined that Petitioner's Prior Record Level had been erroneously calculated. [Doc. 1-9]. The court thus granted the MAR in part, vacated Petitioner's sentence as to the second degree murder charge, and held that he should be allowed to replead anew and receive a new sentencing hearing. [Doc. 1-9 at 10].

Petitioner entered a new Alford plea only to second-degree murder and stipulated to a Prior Record Level III with eight points. [Doc. 10-9 at pp. 90-95]. Following arguments of both counsel, Petitioner was sentenced in the presumptive range to the same term of 204-254 months. [Id. at pp. 96-97]. Petitioner thereafter gave oral notice of appeal to the North Carolina Court of Appeals. [Id. at pp. 98-100].

Petitioner's appellate counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). [Doc. 10-13]. Petitioner filed a pro se brief and petition for writ of certiorari in the North Carolina Court of Appeals. [Doc.

3

10-14]. On February 1, 2022, the North Carolina Court of Appeals filed an opinion concluding that Petitioner's appeal was "wholly frivolous" and that there was no error. State v. Lewis, No. COA21-301, slip op. at 2 (N.C. Ct. App. Feb. 1, 2022) (unpublished); [Doc. 10-11 at 3, 8]. Petitioner did not seek review from the North Carolina Supreme Court.

On December 12, 2022, Petitioner filed another petition for writ of certiorari in the North Carolina Court of Appeals [Doc. 10-16], which was summarily denied on January 18, 2023. [Doc. 10-17].

The Petitioner filed his § 2254 petition in this Court on February 1, 2023, raising four claims of error allegedly committed by the MAR court. [Doc 1 at pp. 5-12]. For relief, Petitioner asks the Court "(1) to order that 2008 counsel was Constitutionally ineffective and the Def. was prejudiced by their fraudulent and ineffective representation, (2) order my sentence served in full and grant me unconditional release from any further time, post release or probation due to the ineffective assistance of counsel." [Id. at 15 (errors uncorrected)].

The Court entered an Order on November 6, 2023, directing the Respondent to respond to the § 2254 petition. [Doc. 6]. The Respondent filed an Answer [Doc. 8] and a Motion for Summary Judgment on January 5, 2024. [Doc. 9]. Respondent also submitted a brief along with exhibits from

4

the Petitioner's state court proceedings. [Doc. 10]. On February 20, 2024, the Court issued an Order to the Petitioner advising him of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 11]. The Petitioner filed two responses on April 8, 2024. [Docs. 14; 15]. The Respondent's Motion for Summary Judgment is now ripe for review.

## II. FACTUAL BACKGROUND

As set forth by the North Carolina Court of Appeals, the following is a summary of the underlying facts surrounding the Petitioner's convictions:

> On April 23, 2008, at approximately 10:45 p.m., [Petitioner] called the Buncombe County Sheriff's Office to report his wife ("the decedent") had shot herself. When law enforcement officers arrived, they found [Petitioner] "outside sobbing and inside the residence they found a white female fully clothed sitting in an upright position on a sofa." The decedent "had a pistol in her right hand with both her right and left hand in her lap."
>
> After "speak[ing] with law enforcement on a couple of occasions . . . [[Petitioner]] admitted that he shot his wife." In an interview with the Sheriff's Office, [Petitioner] stated "he had a gun and was walking towards his wife when [he] tripped on the rug near the couch and shot her." [Petitioner] alleged the decedent was suicidal so he "had gone and retrieved the gun and was going to give it to her and she wanted to kill herself." However, [Petitioner] conceded that she would not have shot herself. [Petitioner] later admitted that he staged the crime scene to make it look as though the decedent had committed suicide. The autopsy revealed that the decedent died from a gunshot wound to her head. The gunshot wound was to the upper right frontal area of her skull, there was no sign of stippling, and there

5

> was no exit wound. The decedent also had bruising on both wrists and above the left eye.

Lewis, slip op. at 2; [Doc. 10-11 at 3].

### III. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56). The burden then shifts to the nonmoving party to proffer competent evidence and specific facts showing that there is a genuine issue for trial. Id. at 323-24. The nonmoving party must oppose a summary judgment motion by going beyond the pleadings and by their own affidavits, or by the "depositions, answers to interrogatories, and admissions on file,"

designate "specific facts showing that there is a genuine issue for trial." Id. (citing Fed. R. Civ. P. 56). The nonmoving party "may not rest upon the mere allegations or denials of his pleading" to defeat a motion for summary judgment. Id. at 322 n.3.

Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the summary judgment motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Id. *at 599.* A court is bound to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

In reviewing the parties' motions for summary judgment, due to the nature of this action, the Court must also consider the requirements governing petitions for habeas corpus under 28 U.S.C. § 2254(d) of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). That section of the AEDPA applies to "a person in custody under a state-court judgment who seeks a determination that the custody violates the Constitution, laws, or

treaties of the United States." Rule 1(a)(1), 28 U.S.C. foll. § 2254. A federal court may not grant § 2254 relief as to any claim "adjudicated on the merits" in state court unless the state court's adjudication of such claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d).

A state court's decision constitutes an unreasonable application of clearly established federal law under § 2254(d)(1) when the state court correctly identifies the "governing legal principle . . . but unreasonably applies that principle to the facts of the . . . case." Barnes v. Joyner, 751 F.3d 229, 238 (4th Cir. 2014) (citation omitted). To find an "unreasonable application of federal law" requires a "substantially higher threshold" to overcome. Schiro v. Landrigan, 550 U.S. 465, 473 (2007). In making this assessment, the habeas court looks "to whether the state court's application of law was objectively unreasonable and not simply whether the state court applied the law incorrectly." Barnes, 751 F.3d at 238-39 (citation omitted).

For a state court's factual determination to be held unreasonable under § 2254(d)(2), "[the determination] must be more than merely incorrect or
8

erroneous." Williams v. Stirling, 914 F.3d 302, 312 (4th Cir. 2019) (citation omitted). The state court's finding must be "sufficiently against the weight of the evidence that it is objectively unreasonable." Id. (citation omitted). The AEDPA also provides that "a determination of a factual issue made by a State court shall be presumed to be correct" absent "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1). These provisions of the AEDPA, "operating in tandem," require that a petitioner seeking relief under § 2254(d)(2) establish that the state court's factual finding was "incorrect by clear and convincing evidence, and that the corresponding factual determination was objectively unreasonable in light of the record before the court." Merzbacher v. Shearin, 706 F.3d 356, 364 (4th Cir. 2013) (quoting Miller-El v. Cockrell, 537 U.S. 322, 348 (2003) (internal quotation marks omitted)).

In sum, a federal court "shall not" grant a writ of habeas corpus unless the earlier decision took an "unreasonable" view of the facts or law. 28 U.S.C. § 2254(d). By design, this "standard is difficult to meet." Harrington v. Richter, 562 U.S. 86, 102 (2011). The term "unreasonable" refers not to "ordinary error," plain error, or even to circumstances where the petitioner offers "a strong case for relief," but rather to "extreme malfunctions in the state criminal justice syste[m]." Id. (internal citation omitted). The critical

question is whether the state court "managed to blunder so badly that every fairminded jurist would disagree" with its outcome. Mays v. Hines, 141 S. Ct. 1145, 1149 (2021).

## IV. DISCUSSION

The Petitioner filed his § 2254 petition in this Court, arguing that the state MAR court failed to adjudicate on the merits Petitioner's Sixth Amendment ineffective assistance of counsel claim that Petitioner's trial counsel (1) failed to request the testing of two pieces of allegedly exculpatory evidence thus leading to an involuntary guilty plea by Petitioner; (2) erroneously advised Petitioner to waive indictment and plead guilty to the charge of possession of a firearm by a convicted felon when Petitioner (at that time) was not a convicted felon; (3) erroneously advised Petitioner to accept the Prior Record Level worksheet indicating that Petitioner was a Prior Record Level IV for North Carolina sentencing purposes when his Prior Record Level was actually Level III; further, the MAR court reduced his Prior Record Level to III and resentenced him without rescinding the original plea; and (4) erroneously advised Petitioner that he qualified for Habitual Felon status when he did not so qualify. [Doc 1 at pp. 5-12].

In opposing the petition, Respondent argues that Petitioner's contentions are moot [Doc. 10 at pp. 5-7], untimely [Id. at pp. 7-16], should

be denied on the merits [Id. at pp. 16-18], and should be denied as conclusory [Id. at pp. 18-24]. Respondent's arguments assume that Petitioner's claims are directed at his trial counsel. Respondent, however, misapprehends Petitioner's claims entirely.

Petitioner's habeas argument is quite simple. The MAR court failed to adjudicate the Petitioner's IAC claims brought against his trial counsel. According to Petitioner, had the MAR court decided those claims, it would have found trial counsel provided constitutionally ineffective assistance to him. With a determination that his trial counsel was ineffective, Petitioner would be entitled to have his judgment vacated and his plea stricken. Petitioner then asserts that he would have opted for trial and the opportunity to convince a jury he accidentally shot his wife and should be convicted only of manslaughter. Petitioner's MAR counsel explained Petitioner's position this way:

> Your Honor, I do sympathize with the family and I understand their loss. That said, I also understand that that loss would exist in its entirety whether this is murder or manslaughter, and that's why we don't have families address those issues. We leave it to juries. And that's what should have happened back in 2008. Looking at this case through these lenses now, this case should have been tried in 2008. It would have been tried back then but for the misunderstandings and mistakes that we're correcting at this time.
>
> Mr. Lewis walked into this courtroom thinking he was habitual felon. The plea transcript before Your Honor, the one

filled out by the defendant and signed by the defendant, has included in it still that the state will not proceed on the habitual felon charge. It's actually -- they won't proceed on the habitual felon charge. It was never removed and the judge, Judge Winner, commented on that point. So this was done at such the last moment that it was impossible for certainly the defendant, but probably even the attorney, to comprehend the consequences of removing that status and what it meant going forward, because what he was told that status meant was that had he been successful in trial and that the jury believed that this was in fact an accident, that the gun misfired against his shorts, that he would have been convicted of involuntary manslaughter. That is an F. At a Level V, where he thought he was, it's 27 to 34 months. At a Level III, where he actually should be, it's 17 to 21 months with the possibility of probation, I/A block.

He was told that charge would have been elevated to a Class E felony. At the Level V, where he believed he was, that's 121 to 151 months. Add to that the firearm by felon charge, which we know should have been in existence, for the purposes of North Carolina he's not a convicted felon, at least at that point, and this charge should have never existed. Nonetheless he was told that also would be elevated to the Class C, bringing his total to over 300 months.

Well, the math at that point didn't make sense, the math when he walked into the courtroom, to the best of his knowledge as explained by his attorneys, didn't make sense, because what he would get in a victory would far exceed what he would get through plea. So trial at that point didn't make sense. However, shortly thereafter it did make sense. Once the habitual felon status was removed and the firearm by felon should have been removed, but let's say even if at that point it wasn't, at that point the numbers didn't make sense. They could no longer be elevated. So a victory was a true victory. He had access potentially to a probationary sentence or at the very least 25 months, compared to the 300-plus months that he thought he would get if he went to trial.

> He was there. I would contend that Mr. Lewis fully didn't understand the consequences of that removal. It went quickly, we know that, because it never got removed from the plea transcript and the judge commented on that. So the speed at which this moved prevented a layperson from understanding the consequences. I would go so far to say that it prevented probably the lawyers in the room to understand the consequences, and at that point the plea should have been pulled.

[Doc. 10-7 at pp. 62-65]. With the Petitioner's claims properly understood as set forth in the petition, the Court's analysis is straight forward.

Contrary to Petitioner's assertion that the MAR court failed to adjudicate on the merits Petitioner's Sixth Amendment ineffective assistance of counsel claims, the MAR court, in fact, resolved them on the merits. At the evidentiary hearing, the MAR court noted that it had no evidence that Petitioner's trial counsel was constitutionally ineffective; yet the MAR court noted that Petitioner's sentence calculation clearly was legally erroneous. [Doc. 10-7 at pp. 8-12]. Accordingly, the MAR court gave notice to the parties that it would *sua sponte* invoke N.C. Gen. Stat. § 15A-1420(d)[2] and grant Petitioner relief from his illegal sentence.

---

[2] N.C. Gen. Stat. § 15A-1420(d) states, "Action on the Court's Own Motion – At any time that a defendant would be entitled to relief by motion for appropriate relief, the court may grant such relief upon its own motion. The court must cause appropriate notice to be given to the parties."

As for the IAC claim, the MAR court ultimately found as a fact that "defendant presented no evidence to the court on the issue of the reasonableness of defense counsel's conduct within prevailing professional norms, at the time of the [Petitioner's] sentencing in 2008." [Doc. 10-9 at 85]. Thus, while granting Petitioner relief due to his illegal sentence, the MAR court denied Petitioner's MAR with respect to the IAC claims. [Doc. 10-9 at 89].

The Court finds and concludes from the foregoing that the state MAR court adjudicated all Petitioner's ineffective assistance of counsel claims on the merits unfavorably to Petitioner. Further, the state MAR court's denial of Petitioner's IAC claims due to the absence of any proof is not a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. No IAC facts were put before the state MAR court for consideration. Finally, the Court finds and concludes that the state MAR court's remedy, as fashioned for Petitioner, was based upon an independent and adequate state law ground, namely N.C. Gen. Stat. § 15A-1420(d). As a result, the state MAR court's decision was not contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States. The § 2254 petition will be dismissed, and the Respondent's Motion for Summary Judgment will be denied as moot.

## V. CONCLUSION

For the foregoing reasons, the Petitioner is not entitled to relief on any of his claims of error allegedly committed by the state MAR court. The state MAR court was precluded from granting any of Petitioner's IAC claims due to the absence of evidence indicating subpar performance by Petitioner's trial counsel. Simply put, Petitioner's IAC claims were denied on the merits by the state MAR court for want of evidence. Accordingly, this Court cannot grant the writ of habeas corpus as the state MAR court's decision did not take an "unreasonable" view of the facts or law. 28 U.S.C. § 2254(d). The petition in this matter should be dismissed and Respondent's summary judgment motion should be denied as moot.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (noting that, in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that, when relief is denied on procedural grounds, a petitioner must establish

both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

1) The Petition for Writ of Habeas Corpus [Doc. 1] is **DISMISSED**;

2) The Respondent's Motion for Summary Judgment [Doc. 9] is **DENIED as moot**;

3) The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases; and

4) The Clerk of Court is respectfully directed to substitute Leslie Cooley Dismukes, the current Secretary of the North Carolina Department of Adult Correction, as the proper Respondent.

**IT IS SO ORDERED.**

Signed: August 5, 2025

Martin Reidinger
Chief United States District Judge